[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 158.]

THE STATE OF OHIO, APPELLANT, *v.* REYNOLDS, APPELLEE.

[Cite as *State v. Reynolds*, 1997-Ohio-304.]

*Appellate procedure—Where criminal defendant, subsequent to direct appeal, files a motion seeking vacation or correction of sentence on basis that constitutional rights have been violated, the motion is a petition for postconviction relief as defined in R.C. 2953.21.*

Where a criminal defendant, subsequent to his or her direct appeal, files a motion seeking vacation or correction of his or her sentence on the basis that his or her constitutional rights have been violated, such a motion is a petition for postconviction relief as defined in R.C. 2953.21.

(No. 96-229—Submitted March 19, 1997—Decided June 25, 1997.)

APPEAL from the Court of Appeals for Erie County, No. E-95-041.

————————————

{¶ 1} On June 26, 1986, appellant Larry Reynolds was convicted of aggravated robbery with a firearm specification. Reynolds was sentenced to not less than ten years nor more than twenty-five years for the aggravated robbery. He was sentenced to an additional three years for the firearm specification, which was to be served consecutively with the sentence for aggravated robbery.

{¶ 2} Reynolds appealed his conviction. On June 26, 1987, Reynolds's conviction was overturned and he was awarded a new trial. At his retrial, on May 26, 1988, Reynolds was again convicted of aggravated robbery with a firearm specification.

{¶ 3} Reynolds appealed his conviction again. On September 29, 1989, the court of appeals affirmed Reynolds's conviction.

{¶ 4} On August 23, 1993, pursuant to App.R. 26 (B), Reynolds filed to reopen his appeal, alleging insufficient evidence as to the firearm specification and

ineffective assistance of counsel. Reynolds argued that there was insufficient evidence to prove that the firearm that he allegedly used in the aggravated robbery was operable and that his counsel was ineffective for failing to raise this issue. Reynolds based his arguments on *State v. Murphy* (1990), 49 Ohio St.3d 206, 551 N.E.2d 932 (state must prove operability of firearm for purpose of satisfying firearm specification), and *State v. Gaines* (1989), 46 Ohio St.3d 65, 545 N.E.2d 68 (operability of firearm may be proven by circumstantial evidence).

{¶ 5} The appellate court held that Reynolds's counsel was not ineffective for failing to anticipate the holdings in *Gaines* and *Murphy*.[1] Accordingly, the appellate court denied Reynolds's request to reopen his appeal.

{¶ 6} However, in *dicta*, the appellate court stated that the holdings in *Gaines* and *Murphy* were to be applied retroactively, but found that there was no evidence to support the conviction for a firearm specification. Nevertheless, the court of appeals did not order any remand or reversal.

{¶ 7} Based on the appellate court's *dicta* on the retroactive application of the holdings in *Gaines* and *Murphy*, Reynolds filed a "Motion to Correct or Vacate Sentence" with the trial court, asserting that the state failed to prove the firearm that he allegedly used in the aggravated robbery was operable beyond a reasonable doubt, thereby mandating vacation of the sentence for the firearm specification. The trial court granted the motion and vacated the conviction and sentence for the firearm specification.

{¶ 8} The state appealed the trial court's ruling. The court of appeals affirmed the trial court's decision that vacated Reynolds's sentence for the firearm specification.

---

1. This court decided *Gaines* on October 11, 1989, and *Murphy* on March 7, 1990. Thus, *Gaines* and *Murphy* were not decided *by this court* until after Reynolds's 1988 conviction was affirmed.

**{¶ 9}** The cause is now before this court upon the allowance of a discretionary appeal.

_____

*Kevin J. Baxter*, Erie County Prosecuting Attorney, and *Mary Ann Barylski*, Assistant Prosecuting Attorney, for appellant.

*David H. Bodiker*, Ohio Public Defender, *Timi J. Townsend*, Assistant Public Defender for appellee.

_____

**LUNDBERG STRATTON, J.**

**{¶ 10}** The state asserts several propositions of law in support of the premise that Reynolds is barred from arguing that there was insufficient evidence that the firearm allegedly used in the robbery was operable. In particular, the state alleges that Reynolds's Motion to Correct or Vacate Sentence for a firearm specification was a motion for postconviction relief which was barred by *res judicata* because Reynolds failed to raise the issue of the operability of the gun at trial or in his direct appeal. We find the state's argument persuasive, and for the following reasons, we reverse the judgment of the court of appeals.

**{¶ 11}** A petition for postconviction relief, R.C. 2953.21(A)(1), is filed subsequent to the direct appeal of the conviction. R.C. 2953.21(A)(2). R.C. 2953.21(A)(1) defines the criteria under which postconviction relief may be sought:

"Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed the sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence * * *."

**{¶ 12}** Under this definition, where a criminal defendant, subsequent to his or her direct appeal, files a motion seeking vacation or correction of his or her

sentence on the basis that his or her constitutional rights have been violated, such a motion is a petition for postconviction relief as defined in R.C. 2953.21.

{¶ 13} In the case at bar, Reynolds, subsequent to the affirmance of his conviction, filed a Motion to Correct or Vacate Sentence with the trial court, seeking to vacate his sentence for a gun specification because the state allegedly did not prove that the firearm used in the robbery was operable beyond a reasonable doubt under *Gaines* and *Murphy* as retroactively applied. Accordingly, Reynolds alleged that his sentence for the firearm specification was illegal or otherwise constitutionally repugnant and should be vacated.

{¶ 14} Reynolds's Motion to Correct or Vacate Sentence, despite its caption, meets the definition of a motion for postconviction relief set forth in R.C. 2953.21(A)(1), because it is a motion that (1) was filed subsequent to Reynolds's direct appeal, (2) claimed a denial of constitutional rights, (3) sought to render the judgment void, and (4) asked for vacation of the judgment and sentence.

{¶ 15} Accordingly, we find that Reynolds's Motion to Correct or Vacate Sentence is a petition for postconviction relief as defined in R.C. 2953.21.

{¶ 16} Because Reynolds's motion was a petition for postconviction relief, we also find that it is barred by *res judicata*. In *State v. Perry* (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104, at the syllabus, we held:

"Under the doctrine of *res judicata*, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or *could have been raised* by the defendant at trial, which resulted in that judgment of conviction, or *on an appeal* from that judgment." (Emphasis added.)

{¶ 17} It is established that, pursuant to *res judicata*, a defendant cannot raise an issue in a motion for postconviction relief if he or she could have raised the

4

issue on direct appeal. *State v. Duling* (1970), 21 Ohio St.2d 13, 50 O.O.2d 40, 254 N.E.2d 670.

**{¶ 18}** Reynolds claims that controlling law in the Sixth Appellate District, at the time of his direct appeal, was that a firearm specification required no independent evidence of operability of the firearm beyond the evidence required to establish the use of a deadly weapon to prove aggravated robbery. *State v. Vasquez* (1984), 18 Ohio App.3d 92, 18 OBR 455, 481 N.E.2d 640. Reynolds claims the fact that *Vasquez* was later overturned by this court in *Gaines* precludes the application of *res judicata* to a postconviction motion seeking application of *Gaines*. Reynolds reasons that the *Vasquez* decision was controlling, unless and until reversed by a court of competent jurisdiction; since *Vasquez* was not reversed until after his direct appeal, *res judicata* should not prevent him from seeking application of *Gaines* because he could not have applied the holding in *Gaines* in his case before *Gaines* had been decided.[2]

**{¶ 19}** Reynolds correctly cites the law as to what is controlling authority. However, there was nothing to prevent Reynolds from appealing the issues of operability and proof of operability of a firearm. Reynolds claims that the controlling authority in his appellate district at the time of his appeal was *Vasquez*. However, this did not bar Reynolds from appealing these issues. Even if the appellate court had cited its own decision in *Vasquez* and found against Reynolds, he could have then appealed to this court, which could have reversed or modified *Vasquez*. In fact, the appellate court's request for certification of *Gaines* cited

---

2. Even if we were to accept this position, which we do not, the logic of Reynolds's argument is eroded by the fact that the issues of the requirement to prove operability of a firearm and the standard of proof had been certified to this court in *Gaines* and *Vasquez* by the date of Reynolds's conviction in May 1988. Presumably, the certification of these issues would have alerted Reynolds to appeal these issues because the outcome in this court could have been in his favor. However, he did not appeal those issues in his direct appeal.

*Vasquez* as one of the cases in conflict with *Gaines* as to the evidence required to prove operability of a firearm. *Gaines*, 46 Ohio St.3d at 66, 545 N.E.2d at 69.

**{¶ 20}** In other words, there was nothing that precluded Reynolds from directly appealing the issues of operability of the firearm and the proof required to show operability. As a result, he is precluded from arguing these issues in a petition for postconviction relief pursuant to *res judicata*.

**{¶ 21}** Reynolds also argues that *Gaines* and *Murphy* should apply retroactively in a petition for postconviction relief even when not raised on direct appeal. We decline to accept this position to preserve finality. Further, retroactive application of *Gaines* and *Murphy* would be irrelevant in this case because we have recently decided *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, which, if applied retroactively to the facts of the case at bar, would have upheld the firearm specification against Reynolds despite any application of *Gaines* and *Murphy*.[3]

---

3. In *State v. Thompkins, supra,* we found that *Gaines* and *Murphy* had been misinterpreted by courts of appeals which applied too restrictive a standard for proving the operability of a firearm. We held that in determining the operability of a firearm, the "trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm." (Citations omitted.) *Id* at paragraph one of the syllabus. *Thompkins* clarifies that actions alone, without verbal threats, may be sufficient circumstances to establish the operability of a firearm.

Under the facts of the case at bar, witness Kelly Ann Gibson, a cashier at the IGA, testified that two men came into the store. Both were wearing ski masks and both were holding guns. They indicated that "this is a robbery." While still holding the "silver" gun, one of the men (later identified by fingerprints as Larry Reynolds) jumped on top of the shopping carts and into the office and took a cash register drawer out of the safe. He exited the office, came over to Gibson, and told her to open her cash register drawer. She complied and Reynolds took the cash out of her drawer.

Under the circumstantial test laid out in *Thompkins*, this evidence is sufficient to sustain a conviction for a firearm specification. Two masked men waving guns stated that they are committing a robbery. The fact pattern in *Thompkins* is almost identical to that in the case at bar.

As Reynolds argued in his brief, if the holdings in *Gaines* and *Murphy* are now and have been the law, then *res judicata* clearly applies to his motion for postconviction relief because Reynolds should have argued that *Gaines* and *Murphy* applied to his case on his direct appeal. He failed to make such an argument. Accordingly, the necessary conclusion to Reynolds's argument supports our holding.

**{¶ 22}** Accordingly, Reynolds was barred from raising these issues for the first time in the petition for postconviction relief that he entitled "Motion to Correct or Vacate Sentence." *Duling, supra.*[4]

**{¶ 23}** Therefore, the trial court erred in vacating Reynolds's sentence for the firearm specification. Accordingly, we reverse the judgment of the court of appeals and reinstate Reynolds's sentence for the firearm specification.

*Judgment reversed.*

MOYER, C.J., DICKINSON, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

DOUGLAS, J., concurs in judgment only.

CLAIR E. DICKINSON, J., of the Ninth Appellate District, sitting for RESNICK, J.

––––––––––––––––

---

4. Ironically, this matter has now come full circle. Defendant wants *Gaines* and *Murphy* retroactively applied. If we were to accept Reynolds's retroactive application argument, then we would also have to apply *Thompkins* retroactively; and under *Thompkins*, Reynolds's claim would fail because the evidence *is* sufficient to support the jury's finding that the firearm was operable. This line of cases illustrates the need for finality and closure when issues have not been preserved for appeal.